Floyd Leon WATSON,
Petitioner–Appellant,

v.

STATE OF ALABAMA,
Respondent–Appellee.

No. 86–7618.

United States Court of Appeals,
Eleventh Circuit.

April 5, 1988.

Floyd Leon Watson, pro se.

Stuart Edwin Smith, Bell, Richardson, Herrington, Wilmer, Sparkman & Shepard, Huntsville, Ala., for petitioner-appellant.

Glenn L. Davidson, Asst. Atty. Gen., Fred F. Bell, Montgomery, Ala., for respondent-appellee.

Before FAY and KRAVITCH, Circuit Judges, and ATKINS,* Senior District Judge.

PER CURIAM:

Floyd Watson, a prisoner convicted by an Alabama court of first degree burglary[1] and sentenced to life imprisonment without parole as a habitual felon, petitioned for a writ of habeas corpus. The district court denied the petition, and we affirm.

Watson raises three issues before this court, only one of which merits full discussion. According to Watson, the Alabama trial judge violated his constitutional rights by coercing the jury to reach a unanimous verdict.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

## BACKGROUND

The trial transcript reveals that, after the jury deliberated for an hour and thirty-five minutes, they returned with a guilty verdict. At defense counsel's request the judge polled each of the twelve jurors to determine whether the verdict was unanimous. The following colloquy then occurred:

> Defense counsel: Judge, there are two ladies that I'm not sure of.
>
> The Court: I have polled the jury. Now, is this your verdict? If it's not your verdict, I need to know. Is this your verdict?
>
> Defense counsel: Go ahead and answer.
>
> Forewoman: Well, it was—
>
> The Court: I want to know. Is this your verdict?
>
> Forewoman: Well, may I speak to the Court?
>
> The Court: Let me explain. A verdict must be unanimous.
>
> Forewoman: Well, it is not unanimous.
>
> The Court: All right. You must retire and begin your deliberations anew and arrive at a unanimous verdict.
>
> Forewoman: That was the question. I told them in the beginning it must be unanimous.
>
> The Court: Yes, it must be unanimous. I ask that you go back to the jury room and continue your deliberations until you arrive at a unanimous verdict.

Trial Transcript at 643–44.

There were no objections to the court's supplemental instructions. The jury retired to resume deliberations. Fifteen minutes later, the jury returned with a unanimous guilty verdict.

 A federal magistrate conducted an evidentiary hearing in this habeas proceeding. Robert Upchurch, one of Watson's trial counsel, testified at the hearing. He stated that when the jury first returned with a verdict, two women jurors appeared

---

1. Watson is currently incarcerated in a federal penitentiary. Upon expiration of his federal sentence, he is scheduled to begin serving his life sentence in an Alabama prison.

"distraught and upset." Therefore, Upchurch stated, "we asked the judge to poll the jury." Watson testified that the Alabama trial judge polled the jurors by asking them to raise their hands one at a time. According to Watson, all twelve jurors raised their hands; but two women jurors were shaking their heads. The judge then instructed the jury that they must reach a unanimous decision.[2]

## DISCUSSION

■ Watson argues that the trial judge's supplemental instruction coerced the jury into rendering a guilty verdict. The applicable standard here is whether under the totality of the circumstances the trial judge's instruction to the jury was coercive. *Lowenfield v. Phelps*, —— U.S. ——, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988); *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965) (per curiam). Courts may not evaluate a single jury instruction in isolation, but must view it in light of the overall charge. We must decide whether the "instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Boyd v. United States*, 271 U.S. 104, 107, 46 S.Ct. 442, 443, 70 L.Ed. 857 (1926).

■ The trial judge's initial instructions to the jury were extensive, thorough and correct. He included all of the standard instructions required in this case. Among other things, he detailed burdens of proof and the elements of the charges against the petitioner. He asked the jury to "look deep within [them]selves and ... in [their] own mind[s]." Trial Transcript at 624–25. The trial judge explained to the jurors their responsibility of determining whether the defendant is guilty beyond a reasonable doubt. He repeatedly indicated that each juror would have to agree with the verdict. *See id.* at 636–647. The supplemental instruction merely emphasized that the verdict must be unanimous. The petitioner put forth no credible evidence that the trial court suggested which verdict the jury should return.[3]

Watson claims that the court did not properly complete a full instruction. Petitioner suggests that the trial judge should have explained the juror's right (1) to vote his or her conscience regardless of the numerical split of the jury, and (2) not to decide at all. Trial counsel, however, had several opportunities to inject the suggested instruction in the trial, but did not do so. When the trial judge first instructed the jury at the close of evidence, he paused momentarily, apparently to allow the attorneys to request additional instructions. Trial counsel did not ask the judge to instruct the jury as suggested above.[4] Neither did trial counsel object to the court's supplemental instructions to the jury. *See* Trial Transcript at 644.[5] Viewing the sup-

---

2. *Dessie Gilbert, one of the jurors, also testified at the evidentiary hearing. Among other things, she stated that she was shaking her head when the forewoman first announced the verdict. Jurors are incompetent to testify as to the effect of a verdict-urging instruction on the jury's deliberations or a juror's thought processes except on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Fed.Rule Evid. 606(b); see also United States v. Garcia, 732 F.2d 1221, 1228 n. 9 (5th Cir.1984); United States v. Vincent, 648 F.2d 1046, 1049–50 (5th Cir. Unit A 1981); accord Hyde & Schneider v. United States, 225 U.S. 347, 383–84, 32 S.Ct. 793, 807–08, 56 L.Ed. 1114 (1912); but cf. United States v. Badolato, 710 F.2d 1509, 1514–15 (11th Cir.1983) (dictum). Dessie Gilbert's testimony in this case, to the extent it concerns the effect of the judge's in-*

struction on the jury's deliberations and her thought processes, is incompetent testimony; and we do not consider it.

3. "Under Alabama law a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict" so long as the court does not suggest what the verdict should be, and does not use duress or coercion. *Showers v. State*, 407 So.2d 169, 171 (Ala.1981).

4. Trial counsel did, however, ask the judge to instruct the jury on the defense of duress. *See* Trial Transcript at 637.

5. An appraisal of the significance of an error in the instructions to the jury requires a comparison of the instructions which were actually given to those that should have been given. Orderly procedure requires that the respective

plemental instruction under the totality of the circumstances, we find that it was not coercive. Thus, we hold there was no violation of Watson's constitutional rights.

 Watson next argues that Alabama violated the Interstate Agreement on Detainers, 18 U.S.C.App., by detaining him before trial for longer than the prescribed time period. Watson, however, raised this issue at neither the state trial level nor the state appellate level. Under Alabama law, he is now foreclosed from raising this issue in a collateral state challenge. *Price v. Holman,* 279 Ala. 324, 184 So.2d 835, 836 (1966); *Luker v. State,* 424 So.2d 662, 663 (Ala.Crim.App.1982). Because Watson failed to demonstrate cause for this state procedural default, he is precluded from raising this issue in this federal habeas proceeding.[6] *See Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1570–71, 71 L.Ed. 2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Douglas v. Wainwright,* 714 F.2d 1532, 1547–48 (11th Cir.1983), *vacated on diff. grounds,* 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874 (1984).

Finally, Watson asserts that his trial counsel was ineffective in many respects.[7] The record demonstrates, however, that his lawyers' performance fell within the "wide range of reasonable assistance." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Accordingly, the judgment of the district court is AFFIRMED.

---

adversaries' views as to how the jury should be instructed can be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error. It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court. *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (footnotes omitted).

6. Watson never presented his Interstate Agreement on Detainers argument to an Alabama court. Thus, the question arises whether Watson exhausted his state remedies. The Supreme Court has indicated that the exhaustion requirement applies only to claims which can still be raised in state court. Where, as here, a state procedural default bars petitioner from raising in collateral state proceedings an argument never before raised at trial or on appeal, petitioner has exhausted his state remedies. *See Engle v. Isaac,* 456 U.S. at 125 n. 28, 102 S.Ct. at 1570 n. 28.

7. Specifically, Watson alleges that his trial counsel failed to (a) compare federal and state transcripts to determine if certain tape recordings were identical, (b) discover the use of a contingent fee arrangement with an informer, (c) discover convictions or bad acts the prosecutor was planning to use for impeachment, (d) have experts examine tape recordings, or (e) ask for the state equivalent of *Brady* or *Jenks* [sic] [*Jencks*] material. Also, Watson alleges that one of his trial counsel, Mr. Upchurch, (f) filed no pretrial motions and (g) failed to subpoena certain witnesses.