**Armando LEON, Jr., Petitioner,**

v.

**Richard L. DUGGER, et al., Respondents.**

No. 88–1427–CIV–T–13(C).

United States District Court, M.D. Florida, Tampa Division.

Sept. 26, 1990.

Armando Leon, Jr., pro se.

Matthew H. Perry, Asst. Federal Public Defender, Tampa, Fla., for petitioner.

Candance M. Sunderland, Asst. Atty. Gen., Tampa, Fla., for respondents.

## ORDER

CASTAGNA, District Judge.

THIS CAUSE comes on for consideration upon the magistrate's report and recommendation recommending that the above styled petition be dismissed with prejudice. All parties previously have been furnished copies of the report and recommendation and have been afforded an opportunity to file objections pursuant to Section 636(b)(1), Title 28, United States Code.

Upon consideration of the report and recommendation of the magistrate, all objections thereto timely filed by the parties, and upon this court's independent examination of the file, it is determined that the magistrate's report and recommendation should be adopted.

Accordingly, it is now

ORDERED:

(1) The magistrate's report and recommendation is adopted and incorporated by reference in this order of the court.

(2) The petition for writ of habeas corpus is hereby DISMISSED with prejudice.

DONE and ORDERED.

## REPORT AND RECOMMENDATION

ELIZABETH A. JENKINS, United States Magistrate.

THIS CAUSE comes on for consideration of a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by a state prisoner. Petitioner challenges his 1986 conviction for first degree murder for which he was sentenced to life imprisonment with a mandatory minimum term of 25 years. Petitioner was convicted following a jury trial after he had pleaded not guilty by reason of insanity.[1] Counsel has been appointed to represent the indigent petitioner in this action.

The petition presents three grounds for relief: (1) whether the trial court's rejection of a plea agreement agreed to by the state and by petitioner violated petitioner's right to due process of law and equal protection; (2) whether petitioner was denied effective assistance of trial counsel due to counsel's failure to preserve any and all issues stemming from the trial court's rejection of the plea agreement mentioned above; and (3) whether petitioner was denied his right to meaningful appellate review because of trial counsel's ineffective assistance in failing to (a) adequately preserve for review the trial court's ruling excluding certain evidence of harassment of petitioner by the victim; (b) properly object to the trial court's ruling limiting the number of expert witnesses who could be called by either side; and (c) object to the trial court's interjection into the trial proceedings during the petitioner's case-in-chief.[2]

### I

Respondent does not contend that petitioner has failed to exhaust state remedies but does argue that the petitioner has procedurally defaulted the claim presented in ground one of the petition pursuant to *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Petitioner did not present the issue regarding the trial court's rejection of the plea agreement in the direct appeal of his conviction. This issue was presented in a *pro se* motion to vacate judgment and sentence filed pursuant to Rule 3.850, Fla.R. Crim.P. The trial court conducted no hearing and did not enter a written order summarizing the reasons for denying relief but instead wrote "Denied HLC 3–9–88". Respondent's procedural default argument is foreclosed by *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) in which the Court held that the procedural default doctrine does not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar.[3]

### II

The parties have agreed that no evidentiary hearing is necessary and have briefed the issues presented.[4]

Petitioner was charged by indictment with first degree murder in the death of Darrell DiBona, in Hillsborough County, Florida. Petitioner pleaded not guilty by reason of insanity and his first trial ended in a mistrial when the jury was unable to reach a verdict.

As the second trial was about to commence, the state offered petitioner a *nolo contendere* plea to a reduced charge of second degree murder with a sentence of

---

1. This matter has been referred to the undersigned by the district court for consideration and a Report and Recommendation. See Local Rules 6.01(b) and 6.01(c), M.D.Fla.

2. *See* disputed issues listed in the Pre–Evidentiary Hearing Stipulation (Dkt. 20, p. 3–4). The issues subsequently briefed by the plaintiff include several other alleged omissions by trial counsel which will be addressed in the discussion of ground three. To the extent that these issues differ from those presented in the original petition, the undersigned assumes that the later filings on behalf of petitioner correctly state the issues presented.

3. Respondent's additional argument that *Harris* should not apply retroactively is also without merit. *See Harmon v. Barton*, 894 F.2d 1268, 1272 n. 8 (11th Cir.1990).

4. *See* Dkt. 20, p. 4; Dkt. 25 and 26.

25 years, including a three-year minimum mandatory term.

The plea was tentatively accepted by the court subject to the prosecution obtaining the views of the wife of the victim. After talking with the victim's wife, the prosecutor returned to court and told the court that Mrs. DiBona had stated that it was a difficult decision and that she would be happy to have the prosecutor make the decision and that she would go along with whatever decision he made.

The court then stated:

Well, I'm not inclined to accept it without their clear concurrence, and they are sort of putting it on your shoulders, and I am not saying they would do this, but once you do whatever you all have agreed to do, you know what position they are going to take. I have no reason to think they are going to be unhappy about it after you do it, but I don't see any reason not to try the case.

Let's just try it and let the jury make the decision. In my judgment, the case is too serious to do anything—and I am sure you agree with me—without the full confidence and support of the victims and the family, and I don't feel that we quite have that. We sort of have, "Well, you do what you think is right," and once you do it, then where are you going to be?

I think we ought to just try the case. So get the forty jurors back.

(R 8).

No objection was made at that time by defense counsel to the court's rejection of the plea offer and the parties have not cited to any part of the trial transcript indicating a later objection by defense counsel.

Petitioner was represented by the same retained attorneys throughout the proceedings at the trial level: B. Anderson Mitcham and Jack Crooks. Except for a prosecution rebuttal witness, the same witnesses were called by the prosecution and defense as testified at the first trial. Whether the defendant was insane when he killed Mr. DiBona was the pivotal issue at trial.

Petitioner was represented on appeal by Assistant Public Defender A.N. Ridabaugh. Neither Mr. Ridabaugh, Mr. Mitcham or Mr. Crooks testified at any post-conviction proceeding concerning petitioner's Sixth Amendment claim and there are no affidavits from them in the record.

On March 27, 1985, petitioner shot and killed his former business partner, Darrell DiBona. Although petitioner did not testify in his defense, evidence was introduced that they had disagreed about how to run their business and that Mr. DiBona had also filed a complaint against petitioner in 1983 for embezzlement and again in 1984. On the day of the shooting, petitioner was told that another acquaintance had filed a complaint against him for embezzlement. When petitioner called his wife to tell her of this, they both became very upset and she called him a weakling. Petitioner drove to the DiBona residence and waited until Mr. DiBona and his wife returned home. Petitioner fatally shot Mr. DiBona several times at close range in front of his residence. Petitioner drove to his attorney's office. His attorney took him immediately to the office of Dr. Walter Afield, a psychiatrist. Petitioner claimed that he saw Mr. DiBona as the incarnation of the devil. Dr. Afield diagnosed petitioner as psychotic, out of touch with reality and unable to distinguish right from wrong at the time of the shooting. Four other psychiatrists who examined petitioner agreed with Dr. Afield's assessment.

The prosecution called two psychiatrists who had also examined petitioner. Both testified that petitioner's behavior in Dr. Afield's office was hysteria and that he was able to distinguish right from wrong at the time of the shooting. The prosecution also called a clinical psychologist who had not examined petitioner but who testified about the difficulties involved in accurately diagnosing mental illness in persons charged with crimes.

### III

■ A. Petitioner contends that the trial court abused its discretion in refusing to accept the plea agreement, thereby violat-

ing his right to equal protection and due process of law. His counsel cites no cases in support of this argument.[5] As respondent points out, a court's rejection of a plea agreement implicates no federal constitutional right. A defendant has no right to have a guilty plea accepted. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (dicta);[6] *see also Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1983) ("A plea bargain standing alone is without constitutional significance."); *cf. United States v. Bean*, 564 F.2d 700 (5th Cir.1977) (under Rule 11, a federal court has discretion to accept or reject a plea). Therefore ground one of the petition does not entitle petitioner to habeas relief.

B. Grounds two and three allege that petitioner's right to effective assistance of counsel under the Sixth Amendment was violated by specific acts or omissions of trial counsel.

The standard applied in determining the effectiveness of counsel for Sixth Amendment purposes is whether, based on the totality of the circumstances and the entire record, the assistance rendered was reasonably effective. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Furthermore, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance of counsel. Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068.

■ A court need not address whether counsel's performance was deficient if petitioner fails to demonstrate that he was prejudiced by the alleged deficiencies. *Strickland, Id.* at 697, 104 S.Ct. at 2069.

In this case petitioner's Sixth Amendment claim can be adjudicated on the basis of the present record. Petitioner has failed to show that any acts or omissions by counsel, even if deficient, would have affected the outcome of petitioner's trial or the appeal of his first-degree murder conviction.

*1. Counsel's failure to preserve for appeal the trial court's rejection of the plea agreement*

■ None of the issues raised on appeal concerned the rejected plea agreement and there is no indication that petitioner's attorneys made an objection to the court's rejection of the tentative plea agreement.

Even if reasonably competent trial counsel would have and should have objected to the court's action, it is highly unlikely that petitioner would have won a reversal of his conviction on appeal on the grounds that the trial court abused its discretion in rejecting the plea based on the equivocal views of the proposal expressed by the victim's spouse. *See generally Davis v. State*, 308 So.2d 27 (Fla.1975) (trial judge never bound by plea negotiations between state and defense). Further, under Florida law, both the prosecution and the court must consider the views of the victim or the victim's family (in a homicide), among other factors, in determining whether to accept a plea. *See* Rule 3.171(b)(1)(ii), Fla.R.Crim.P.; Fla.Stat. §§ 921.143(3), 960.001(1)(e).

*2. Counsel's failure to preserve for appeal the trial court's ruling excluding certain evidence relating to harassment of petitioner by the victim*

Petitioner contends that counsel failed to preserve for appeal by means of a proper objection the trial court's ruling prohibiting

---

**5.** *See* Petitioner's Memorandum of Law (Dkt. 25). Although captioned "memorandum of law" and filed at the court's direction, this document contains no case citations.

**6.** In *Santobello*, the Court held that once a plea is accepted by the court, fundamental fairness is violated if the prosecution reneges on a sentencing agreement. 404 U.S. at 261–262, 92 S.Ct. at 498–499. *Santobello* does not help petitioner because he did not enter a plea but only tentatively agreed to enter a plea. When the trial court learned what the victim's family had told the prosecutor, the court determined that it should not accept the proposed plea and that the case would have to be tried.

the defense from introducing certain evidence that the victim had made false charges of embezzlement against petitioner.

Petitioner states that during cross-examination of prosecution witness Robert Simmons (and other unidentified prosecution witnesses), counsel unsuccessfully attempted to elicit certain information concerning Mr. DiBona's financial position and his business relationship with petitioner. Petitioner contends that although the court sustained the prosecution's objection to this line of inquiry and refused defense counsel's request for a bench conference, counsel's failure to make a proffer resulted in the issue not being preserved for appeal.

Robert Simmons, a business acquaintance of petitioner and Mr. DiBona, testified that he witnessed several shouting matches between the two in May or June of 1983 but that he did not know the details of their arguments. Mr. Simmons testified that several months later, Mr. DiBona was hospitalized for a week and that petitioner angrily told him that Mr. DiBona was a "f——g twerp" who was stealing from the company and that the company was going to "go down the tubes".

On cross-examination, defense counsel attempted to establish that Mr. DiBona had been fired from Bankers Life for stealing money. The trial court sustained the prosecution's objection even after a bench conference during which defense counsel argued that the evidence was admissible to show that the victim "drove a sane man crazy trying to pin [the theft] on [the defendant]." The court stated that counsel could ask whether the victim tried to pin blame on the defendant but that counsel could not prove that the victim was a thief. Counsel announced that he had no further questions at that time but asked that the witness be retained. There is no indication that Mr. Simmons testified again during the trial. (R 633–659).

One of the three issues raised by petitioner on direct appeal was whether the trial court erred in excluding evidence that Mr. DiBona was sabotaging petitioner's businesses, filing false complaints and embezzling from him. Appellant's brief argued that this evidence showing that the victim's efforts to "frame" petitioner caused petitioner to develop a brief psychosis which resulted in his killing the victim while insane. (Appellant's brief, p. 9–14). The state, in its brief, never argued that this issue had not been preserved for appeal but contended that the court correctly ruled that such evidence was generally irrelevant (Appellee's brief, p. 5–7). The Second District Court of Appeal *per curiam* affirmed petitioner's conviction. This issue was briefed on the merits on appeal by both parties and, presumably, decided on the merits against petitioner by the Second District Court of Appeal.

The record therefore contradicts petitioner's assertion that defense counsel failed to preserve for appeal any issue relating to Mr. Simmons' testimony or that of other witnesses who were asked similar questions.

### 3. Counsel's failure to object to trial court's ruling limiting the number of expert witnesses

■ Petitioner states that counsel was ineffective in failing to properly argue and preserve his objection to the court's limitation on the number of expert witnesses who could be called by each side on the insanity issue.

This issue is plainly without merit. The trial court did limit the defense to calling three "limited" and two "complete" expert psychiatric witnesses. The court explained that counsel could ask the three "limited" witnesses their opinions and the basis for their opinions. Defense counsel did not object to this procedure. (R 1016–1018).

Petitioner has not suggested what his trial counsel should have argued to the court differently. Petitioner has not alleged that an available defense witness was prevented by the court's ruling from testifying on the insanity issue. Petitioner has failed to show that a reasonably competent attorney should have objected or obtained any different ruling from the court or that, if so, the trial outcome would probably have differed as a result.

### 4. Counsel's failure to object to the trial courts' interjection into the defense's case-in-chief

 Petitioner claims that the trial court continuously interjected itself into the trial and that counsel failed to preserve this issue on appeal. The three transcript references cited by petitioner[7] indicate that during the direct examinations of defense witnesses Doris Dickson and Dudley Dickson, the court directed the witnesses to answer the question asked by counsel (R 1023; 1033). On another occasion during the direct examination of another defense witness, a minister who had befriended petitioner, the court *sua sponte* prevented defense counsel from asking a question on the grounds of relevancy (R 1046). Defense counsel did not object to the court's questions but did take issue, without success, on the court's ruling regarding relevancy (R 1046).

There was nothing improper about the court's intervening in the matters cited by petitioner and, therefore, there is nothing which defense counsel could or should have done. *See generally Gayle v. Scully*, 779 F.2d 802, 806 (2d Cir.1985), *cert. denied*, 479 U.S. 838, 107 S.Ct. 139, 93 L.Ed.2d 82 (1986) ("It is clear that a state judge does not deny a defendant due process of law by merely intervening in a trial to question witnesses"); *cf. United States v. Bertram*, 805 F.2d 1524, 1529 (11th Cir.1986) (in federal prosecution, trial judge's thirty-five interruptions of defense counsel's examination of witnesses not so obtrusive or prejudicial as to deny defendant a fair trial).

This issue is also without merit and does not establish a Sixth Amendment violation.

### CONCLUSION

Petitioner has not established that he is in custody in violation of the Constitution of the United States or its laws or treaties. It is therefore RECOMMENDED:

(1) The petition for writ of habeas corpus be DISMISSED with prejudice.

7. Dkt. 2, p. 36.

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).