**John Eswood AKRAWI, Petitioner– Appellant,**

v.

**John JABE, Warden, Respondent– Appellee.**

**No. 91–1726.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 25, 1992.

Decided Nov. 9, 1992.

Rehearing and Rehearing En Banc Denied Dec. 16, 1992.

---

Carl Ziemba (argued and briefed), Detroit, Mich., for petitioner-appellant.

Kathleen Davison Hunter, Asst. Atty. Gen. (argued and briefed), Habeas Div., Lansing, Mich., for respondent-appellee.

Before: JONES and SILER, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Petitioner, Akrawi, appeals the district court's order denying him habeas corpus relief under 28 U.S.C. § 2254 (1988). His petition presents the following issues: (1) whether there was constitutional error when the trial court precluded petitioner from calling a witness who had violated a sequestration order and whether, if so, the error was harmless; (2) whether there was constitutional error when the prosecution, without objection, elicited testimony claimed to be hearsay and made an allegedly improper rebuttal argument; and (3) whether the failure of petitioner's trial counsel to object to the admission of the allegedly hearsay testimony and failure to object to the prosecutor's allegedly improper rebuttal argument amounted to ineffective assistance of counsel in the constitutional sense. Petitioner is currently serving a life sentence plus a term of 20 to 60 years after having been convicted by a jury of first degree murder and armed robbery. His habeas petition was referred to a magistrate who recommended that the petition be denied. The district court, in a separate and full opinion, adopted the recommendation over the petitioner's objections and this appeal followed. We affirm the result reached by the district court.

## I.

Stella Sienkiewicz died in her home from a gunshot wound to the head inflicted early on the morning of November 10, 1984. She was also robbed of a considerable amount of cash and jewelry. The Detroit Police Department processed the crime scene and obtained petitioner's latent palm print in her bedroom. The state charged petitioner and four other men with first degree murder, felony murder and armed robbery. All were convicted.

### A. Trial

Three of the defendants were tried and convicted earlier, and petitioner, Akrawi, was jointly tried with the remaining defendant, Raad Matti, all in the Recorder's Court in Detroit. After the jury in petitioner's trial was sworn, the trial judge ordered all witnesses for the prosecution and defense sequestered.

One of the state's witnesses was Adam Salbut, the victim's younger brother. Mr. Salbut testified, without objection, that at approximately 1:00 a.m. in the morning of November 10, 1984, his sister telephoned and told him that one of his friends, Saad

Magi,[1] was outside her house and wanted to borrow twenty dollars from her and that she intended to send him away. Salbut's statement corroborated the testimony of Raad Stepho, a defendant convicted in the first trial and a state's witness in petitioner's trial, who testified they used Saad Magi as a ruse to get into the house before robbing the victim. Neither petitioner's nor Matti's counsel objected to Salbut's testimony with respect to his telephone conversation with his sister as being hearsay.

The prosecution, as stated, called as its witness Raad Stepho. Stepho first testified that he had been convicted of second degree murder and unarmed robbery in the robbery and death of Stella Sienkiewicz in a separate trial and was awaiting sentencing on those charges. He also testified that he had agreed to testify against petitioner and his co-defendant, that the sentencing judge would be informed of his cooperation, that the prosecution planned to recommend a sentence in excess of ten years, and that he had lied when he denied involvement in the crime when he testified in his own behalf in the earlier trial.

Stepho then testified that he knew petitioner, Akrawi, and that on the evening in question, he met petitioner and the three others charged to plan the robbery of the victim's house. Stepho implicated petitioner in the crime as the person who drove them to and from the victim's house, and as one of the persons who located money and other valuables to steal from the victim's house. He did not, however, testify that petitioner had any involvement in the shooting of the victim other than petitioner's knowledge that two others carried guns.

After presentation of six defense witnesses by his co-defendant, Raad Matti, petitioner took the stand. He denied any involvement in the crime, stating that he was with his girl friend on the morning in question. His defense, in short, was alibi. He could not fully explain how his palm print got on the dresser in the victim's bedroom (as stated, the prosecution had presented such evidence), but stated that a

friend, who was rooming in the victim's house, had once invited him to the house and that during that visit he was taken into the victim's bedroom as well. He did not recall touching anything, but said that he might have leaned up against the dresser while in the bedroom.

Defense counsel then, as their last witness, attempted to call Raad's brother, Waad Stepho, to testify in petitioner's and his co-defendant's behalf by impeaching the testimony of Raad Stepho. The court prevented Waad from testifying because he had violated the court's sequestration order.

Finally, during arguments to the jury, when the prosecutor's allegedly improper rebuttal remarks were made, petitioner's counsel did not object.

The jury found petitioner and his co-defendant guilty on all counts. The trial court sentenced petitioner to a life term on the first degree murder conviction, a life term on the felony murder count, and a term of twenty to sixty years on the armed robbery count.

After petitioner appealed to the Michigan Court of Appeals, on his motion, the case was remanded to the trial court for a hearing on his contention that his representation by trial counsel was unconstitutionally defective. In particular, petitioner contended that his representation was defective because his lawyer did not object to the testimony of the witness Salbut about Salbut's conversation with his sister, the victim, on the night the crime occurred, as being hearsay. Petitioner additionally contended that his representation was defective because his lawyer did not object to the rebuttal argument to the jury by the prosecution.

At this hearing, petitioner's lawyer in the criminal trial was the only witness. He testified that he did not object to the testimony of the witness Salbut because, even if it were hearsay and not covered by an exception, it did not damage his defense because there was no reference in the conversation to his client, Akrawi, and because

1. Magi was one of the three who had been    convicted in the earlier trial.

his defense was alibi, i.e., that his client was not there and was with his girl friend when the crimes were committed. The lawyer further testified that he would have "waved a red flag" and thereby given an unfortunate signal to the jury if he had objected.

With respect to the rebuttal argument of the prosecution to the jury, petitioner's counsel testified that he did not object because the argument was not improper, i.e., there was no personal vouching as to the credibility or lack of credibility of witnesses or other impropriety.

The state trial judge overruled petitioner's contention as to his being denied adequate counsel.

## B. Appeal

On appeal, the Michigan Court of Appeals affirmed the judgment of conviction.

With respect to petitioner's contention that the trial court had erred in ruling that Waad Stepho, brother of the prosecution's witness Raad Stepho, would not be allowed to testify because he violated the trial court's sequestration order, the court held that the trial court had not abused its discretion. In so ruling, the court pointed out that petitioner had the opportunity to attack the credibility of Raad Stepho by showing both the inconsistencies between his trial testimony and his prior testimony in his own criminal trial and by showing Raad Stepho's possible benefit in his own sentencing after having cooperated with the prosecution.

As to the contention that the trial court erred in allowing, without objection, the allegedly inadmissible hearsay testimony of the victim's brother with respect to his conversation with the victim, the court held that such was not reversible error because there was no objection and no showing of "manifest injustice." The court also noted that, even assuming that the testimony was inadmissible hearsay, reversal was not required because the evidence only "described the events surrounding the crime and did not go to the defendant's guilt or innocence." The court further held that the prosecution's rebuttal argument to the

jury, to which there was no objection, was no basis for reversal because there was no "miscarriage of justice," and in any event the argument was not improper because there was no personal vouching or other impropriety in the argument. With respect to petitioner's contention that his lawyer's failure to object to the aforesaid testimony and his failure to object to the prosecution's rebuttal argument to the jury amounted to inadequate representation, the court determined that, since there was, in any event, no reversible error, the failures to object were not incidents of inadequate representation by counsel. The court did, however, vacate the conviction for felony murder because it was error to convict of both first degree murder and first degree felony murder.

The Michigan Supreme Court then denied review.

## C. The habeas petition in district court.

Petitioner then filed a habeas petition. He claimed that the refusal of the state trial court to allow Waad Stepho to testify because of his failure to comply with the sequestration order was a violation of petitioner's Sixth and Fourteenth Amendment right to "compulsory process for obtaining witnesses in his favor" and his Fourteenth Amendment right to "due process." He further claimed that it was constitutional error to admit in evidence, without objection, the allegedly hearsay testimony of the victim's brother with respect to his telephone conversation with her, and that it was constitutional error to allow, without objection, the state's rebuttal argument to the jury. Lastly, petitioner still further claimed that he was denied his constitutional right to counsel because of the failure of his counsel to object to the allegedly hearsay testimony and to object to the prosecution's rebuttal argument.

The district court held, relying on *Holder v. United States*, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893); *United States v. Schaefer*, 299 F.2d 625 (7th Cir.), *cert. denied*, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962); and *United States v. Gibson*, 675 F.2d 825 (6th Cir.) *cert. denied*, 459

U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982), that under the circumstances presented, the trial court violated petitioner's Sixth and Fourteenth Amendment right by prohibiting Waad Stepho from testifying because it was not shown that Stepho knowingly violated the sequestration order or did so with the consent or knowledge of petitioner or his lawyer. Moreover, the court held that there were no other circumstances that would support barring the witness from testifying, and that the trial court failed to consider alternatives such as sanctions or comment to the jury with respect to Stepho's conduct. For these reasons, the district court concluded that the state trial court's ruling "constituted an abuse of discretion" and that, unless the ruling was harmless error beyond a reasonable doubt, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), petitioner was entitled to relief.

The district court then determined that the ruling that prevented Waad Stepho from testifying was harmless beyond a reasonable doubt, a conclusion with which we agree for reasons that will be spelled out below. The district court further pointed out that the admission of the testimony of the victim's brother, which was not objected to, and the prosecution's rebuttal argument, which was also not objected to, were disposed of by the Michigan Court of Appeals on the basis that there was no objection, and that there was no "manifest injustice" or "miscarriage of justice" involved. The district court, relying on *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), applied those standards and held that petitioner was not entitled to relief for the claimed errors.

Relying on *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the district court further held that petitioner was not entitled to relief based on his claim of ineffective assistance of counsel for failure of trial counsel to object to the allegedly inadmissible hearsay testimony and to the allegedly improper rebuttal argument, since, the court determined, it is apparent that counsel's conduct was at least reasonable. In any event, the court further held that it does not appear that, but for these claimed counsel's errors, there is a reasonable probability that petitioner would have been acquitted.

The district court, finding that the ruling that prevented Waad Stepho from testifying to be harmless and finding no other bases for habeas relief, dismissed the petition and petitioner appealed.

II.

A. The enforcement of the sequestration order.

As stated, the district court determined that the enforcement of the sequestration order, under the circumstances presented here, amounted to a violation of the Sixth and Fourteenth Amendments. The issue arose at the end of the proof in the trial when the defendants sought to offer the testimony of Waad Stepho to attack the credibility of his brother, Raad Stepho, who had been convicted in an earlier trial and had testified as a prosecution witness in petitioner's trial. The record on this issue consists of a colloquy between the trial court and defense counsel and a proffer by defense counsel when Waad Stepho was called as the last defense witness. It is undisputed that the state trial judge announced to counsel at the beginning of the trial that witnesses would be sequestered prior to their testimony and that Waad Stepho had, during the trial, been in and out of the courtroom, including the morning he was offered as a witness. It is also undisputed, based on petitioner's counsel's representation to the court, that counsel did not learn that Waad Stepho would be a witness until the night before and that counsel did not know that he had been in the courtroom that morning.

In making its determination that there was a Sixth and Fourteenth Amendment violation, the district court, as stated, relied on the *Holder* decision by the Supreme Court, the *Gibson* decision by this court and the *Schaefer* decision by the Seventh Circuit. These decisions are not, however, constitutional decisions. They all deal with appeals of criminal convictions in federal

courts and do not purport to define federal constitutional law.[2]

It should be obvious that, in delineating a constitutional rule in this context, there would be a number of factors that could come into play, singly or in combination, such as: whether counsel, the defendant or the witness was actually aware of the rule; whether counsel or defendant knew that the rule was being violated by the witness; the testimony the tendered witness had heard and the testimony the witness would likely give; whether the trial court considered alternatives to barring the testimony such as sanctions or comment to the jury and the effectiveness of such alternatives.

Under the circumstances presented, and particularly because we are satisfied that, beyond a reasonable doubt, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the error, if there was one, was harmless, we reject the invitation to craft constitutional law for this circuit and to apply it here.

■ According to the proffer of defense counsel, Waad Stepho would testify that the second day after his brother, Raad Stepho, had been convicted of murder and robbery, their father was called down to the homicide bureau or prosecutor's office and that Waad and Raad attended the meeting. Also present at the meeting were representatives from homicide and the prosecutor's office. Waad would further testify that Raad was told by an officer or the prosecutor that if he would state which of the three people, Kalasko, Matti or Akrawi (who were three of the five charged in this matter), actually killed the victim, he, Raad Stepho, would "go free." Waad would also testify that Raad had informed him that Raad had told Kalasko that if Kalasko, who had been convicted with Raad, did not "give him some money to hire a lawyer that he was going to get [Kalasko] in trouble and make a statement to the police or something."

As heretofore indicated, we believe that the refusal of the trial court to allow Waad Stepho to so testify was, even if error, harmless beyond a reasonable doubt. In the first place, Raad Stepho had testified, as a prosecution witness, that he had been convicted of murder and robbery in connection with the robbery and killing of Sienkiewicz in a separate trial and was awaiting sentence on these convictions. He also had affirmed that he had agreed to testify against these defendants on trial, that his sentencing judge would be advised of his cooperation, that the prosecution planned to recommend a sentence in excess of ten years and that he lied as a witness in his own behalf when he was tried and convicted.

In view of these admissions by Raad Stepho in his testimony as a prosecution witness in this case, the disallowance of the testimony of Waad Stepho, to be offered to attack the credibility of Raad Stepho was, if error, harmless. Raad Stepho's testimony had already established that he had a strong motive to aid the prosecution in its case against petitioner and that he had lied under oath at his own trial. Moreover, as the state trial judge pointed out, to suggest that Raad Stepho, having been convicted of murder and robbery, would be allowed by her to "go free" because of his testimony in this trial, was "ridiculous."

B. The allegedly hearsay testimony and improper argument.

■ We believe the district court was correct that the trial court committed no constitutional error by admitting, without objection, the testimony of the victim's brother, Salbut, with respect to his telephone conversation with the victim shortly before the robbery and murder. He testified that his sister had told him that his friend, Saad Magi, had just come to her house at 1 a.m. seeking to borrow $20, that she was not going to lend him the money, that he was on her front porch, and that she was going to send him on his way. We

---

**2.** *But see Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), which held that the enforcement of an Illinois state rule that prohibited a defendant from offering a witness in his criminal trial because of the failure to list the witness did not violate the Sixth Amendment.

agree with the district court that petitioner's claim of error was disposed of by the Michigan Court of Appeals on the adequate state law ground that there was no objection and no showing of "manifest injustice." Furthermore, it is highly likely that the testimony was admissible under at least one of the well-recognized exceptions to the hearsay rule. *See, e.g.,* Fed.R.Evid. Rule 803(1) (Present sense impression); 803(2) (Excited utterance); 803(3) (Existing mental, emotional or physical condition).

The short answer to petitioner's contention with respect to the rebuttal argument is that the argument was not improper.

C. The failure to object to allegedly hearsay testimony and improper rebuttal argument as amounting to inadequate representation by counsel.

As heretofore indicated, petitioner's trial counsel testified, at a post-trial hearing, as to his adequate practical reason for not objecting to this testimony and, in any event, as heretofore pointed out, the testimony was likely admissible.

The failure to object to a proper argument is not inadequate representation.

### III.

The judgment of the district court denying habeas relief is AFFIRMED.