Shawn SOUTHERLAND, Petitioner,

v.

Glen S. GOURD, Commissioner, NYS Dept. of Correctional Services and: Thomas Sanders, Superintendent of Adirondack Correctional Facility, Respondents.

Nos. 02–CV–1304 (JBW), 03–MISC–0066 (JBW).

United States District Court, E.D. New York.

June 11, 2003.

Eliot Spitzer, Attorney General of the State of NY, New York, NY, for Respondent.

Beth Janet Thomas, N.Y. State Attorney General, New York, NY, for Respondent.

## JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

### I. Facts and Procedural History

Petitioner was charged with numerous counts, *inter alia,* of burglary, robbery and assault arising out of an incident in which he violated a restraining order, physically assaulted his wife, and stole her purse. There was testimony at trial that petitioner—even though an order of protection had been entered by the court ordered him to "stay away" from his wife's apartment and place of employment—punched his wife in the face as she opened the door to her apartment to walk her daughter to school. Petitioner proceeded to drag his wife into her bedroom and punch her repeatedly. Petitioner's daughter attempted to call 911, but petitioner took the phone away from her and ripped the wires out of the wall. The assault continued for several hours, until petitioner's wife was able to escape into a common hallway in the apartment building and called out for a neighbor's help. Petitioner again began hitting his wife, until a neighbor, Karen Williams, came out and screamed at him to stop. Petitioner then grabbed his wife's purse and fled. Williams then called 911.

Petitioner chose to represent himself and forgo a jury trial. At the close of evidence, the trial court dismissed several counts—including those for first degree burglary, second degree assault and aggravated criminal contempt—because the prosecution had failed to prove that his wife had suffered physical injury during

the crime. Petitioner was found guilty of one count each of first degree criminal contempt, third degree robbery, and fourth degree criminal mischief. He was acquitted of the four remaining counts, including counts for endangering the welfare of a child and for unlawful imprisonment. He was sentenced to 3 to 6 years in prison.

Petitioner's convictions and sentence were affirmed by the Appellate Division on direct appeal, where he again proceeded pro se. Leave to appeal to the New York Court of Appeals was denied. Petitioner has also filed four separate motions to vacate judgment, all of which were apparently denied by the trial court; leave to appeal to the Appellate Division was not granted for any of these motions.

Petitioner has been released from physical custody and is free on parole.

In the present application for a writ of habeas corpus, petitioner claims (1) that his "conviction was obtained by the unconstitutional failure to disclose evidence [a 911 tape] favorable to defendant"; (2) that the prosecution violated his *Rosario* rights by failing to preserve the 911 tape; (3) that his federal constitutional rights were violated by the prosecution's "willful and blatant violation of discovery rules" concerning notice that the state intended to call two witnesses; and (4) that evidence of guilt on the criminal contempt charge was insufficient to sustain the trial court's verdict.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unrea-

sonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

Formerly, a state prisoner's federal habeas petition had to be dismissed if the

prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, *3, 2000 U.S. Dist. LEXIS 101, at *10 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## IV. Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and ac-

tual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

## V. Certificate of Appealability

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## VI. Instant Claims

Respondent concedes that all claims have been exhausted and that none are procedurally barred from review in this court.

Petitioner first claims that his "conviction was obtained by the unconstitutional failure to disclose evidence [a 911 tape] favorable to defendant." The 911 tape petitioner complains about was a recording of the 911 call made by Williams, the neighbor of petitioner's wife. Pursuant to ordinary police procedures, that 911 tape was destroyed. The fault lies with the prosecution, which sought to preserve the tape but mistakenly provided the wrong date for the tape on its subpoena. Aside from petitioner's bald assertion, there is no evidence that the prosecution acted in bad faith with respect to the tape's destruction. Petitioner claims that the tape is exculpatory in that it would have helped impeach Williams's testimony at trial.

The prosecution in a criminal matter has a constitutional obligation to disclose exculpatory evidence to the defendant. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence that could only be used to impeach a witness and that would not be admissible the defense's direct case is also subject to disclosure under *Brady.* *See United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "A finding of materiality of the evidence is required under *Brady." Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Exculpatory evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375).

Accepting the premise that the prosecution had a duty to preserve the 911 tape, this court nonetheless notes that petitioner has offered no compelling explanation for why the tape itself would prove material to his defense or would have helped in any way to impeach Williams's testimony. The fact that Williams placed the call was established at trial by virtue of a "sprint" report, which provides information regarding the 911 call but not a transcript of it. Whether the timing of the call—which the sprint report indicates was at 1:23 p.m.—is inconsistent with the testimony of petitioner's wife that petitioner left her building at around 11:00 a.m. is a matter that was addressed by defense counsel in cross examination of petitioner's wife. The actual tape was unnecessary for this purpose. Further, petitioner's claim that his wife actually made the 911 call rather than Williams is belied by the sprint report, which indicates that the call was made by Williams. Even if the tape proves that Williams had not made the call (or that both petitioner's wife and Williams made 911 calls), in light of the compelling trial testimony of the two women there is no reasonable probability that, had this evidence been disclosed to the defense, the result of the proceeding would have been different. Petitioner has failed to demonstrate that the destruction of the 911 tapes " 'undermines confidence in the outcome of the trial.' " *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *Bagley,* 473 U.S. at 678, 105 S.Ct. 3375). Finally, it was reasonable for the trial court to have decided not to give an adverse inference instruction (to himself, as the factfinder) under the instant circumstances.

Petitioner also claims that the prosecution violated his *Rosario* rights by failing to preserve the 911 tape. Pursuant to *People v. Rosario,* the state must provide a criminal defendant with the pretrial statements of any witness who will be called to testify on behalf of the prosecution. 213 N.Y.S.2d 448, 173 N.E.2d 881, 883–84. Federal habeas corpus relief does not lie

for mere errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Because a *Rosario* claim is purely a state right, embodying " 'policy considerations grounded in state common law, not constitutional principles,' " the prosecutorial failure to turn over *Rosario* material is not subject to habeas review by a federal court. *Whittman v. Sabourin,* 2001 WL 687369, *3, 2001 U.S. Dist. LEXIS 8049, at *12 (S.D.N.Y. June 12, 2001) (quoting *Southerland v. Walker,* 1999 WL 1140870, *9, 1999 U.S. Dist. LEXIS 19327, at *9 (S.D.N.Y. Dec. 10, 1999)). Turning over these materials would not have affected the result. The claim lacks merit.

Petitioner next claims that his federal constitutional rights were violated by the prosecution's "willful and blatant violation of discovery rules" concerning the prosecution's alleged failure to notify petitioner, pursuant to section 710.30 of New York Criminal Procedure Law, that the state intended to call two "identification" witnesses. As with the *Rosario* claim, this claim alleges no grounds on which a habeas court may grant relief. *See Arocho v. Walker,* No. 01–Civ.1367, 2001 WL 856608, *2, 2001 U.S. Dist. LEXIS 10689, *7–*8 (S.D.N.Y. July 27, 2001) ("Violation of the notice requirement of New York Criminal Procedure Law § 710.30 is purely a matter of state law and raises no constitutional issues for a habeas court to review."). At any rate, section 710.30 requires notice to a defendant only of a witness "who has previously identified" defendant "either at the time or place of the commission of the offense or upon some other occasion relevant to the case." The rule does not set forth a blanket requirement that defendant must be notified of all witnesses the prosecution intends to call, but rather to put a defendant on notice that the state intends to offer identification evidence that may be subject to suppression at a pretrial

hearing. *See* Peter Preiser, *Practice Commentaries,* N.Y.Crim. Pro. Law § 710.30. Neither of the two witnesses petitioner complains about in the instant case—Williams and the guardian of petitioner's child who was present at a hearing in which a restraining order was granted—had previously identified petitioner out of court prior to the trial. Advance notice would have made no difference in the result. No habeas relief is merited on this ground.

Petitioner further claims that the prosecution's request for notice of an alibi defense triggered a reciprocal obligation on the prosecution to have served petitioner with a list of witnesses who would rebut that defense. Section 250.20(2) of New York Criminal Procedure Law states that the prosecution must "serve upon the defendant ... a list of the witnesses the people propose to offer in rebuttal to discredit the defendant's alibi at the trial." The statute proceeds to explain, however, that "A witness who will testify that the defendant was at the scene of the crime is not such an alibi rebuttal witness." N.Y.Crim. Pro. Law § 250.20(2). Williams and the guardian were not alibi rebuttal witnesses. The prosecution therefore had no obligation to provide petitioner with notice that they would be called at trial. In addition, there was no Confrontation Clause violation with respect to any of the prosecution's alleged failures to abide by state discovery rules, as alleged at various points in his petition. Advance notice would have made no difference in the result. The claim lacks merit.

Finally, petitioner claims that evidence of guilt on the criminal contempt charge was insufficient to sustain the trial court's verdict. The relevant question for this court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court,* 109 F.3d 836, 840 (2d Cir.1997). The testimony of petitioner's wife concerning the assault she suffered at petitioner's hands, along with the testimony of Williams, the neighbor who observed petitioner assaulting petitioner's wife, were sufficient to have allowed a reasonable factfinder to find petitioner guilty of first degree burglary and second degree assault. Petitioner's claim that he was not aware that a restraining order had been taken out against him, and that his conviction for aggravated criminal contempt was therefore against the weight of the evidence, is belied by the record. Both petitioner's wife and the guardian of petitioner's child testified at trial that petitioner was in court when the order of protection was issued. See Trial Tr. at 84–86; 363–36; 73. Habeas relief is not warranted on this ground.

VII. Conclusion

The petition for a writ of habeas corpus is denied.

No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no showing of the denial of a constitutional right warranting an appeal.

Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.