**Jermaine SANDERS,**

v.

**Ken MCKEE,**

**No. 02–CV–73427–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

July 31, 2003.

Jerrold E. Schrotenboer, Jackson County Prosecutor's Office, Jackson, MI, Jermaine Sanders, Ionia, MI, pro se.

Brenda E. Turner, Michigan Department of Attorney General Habeas Corpus Division, Lansing, MI, for Respondent.

### *OPINION*

DUGGAN, District Judge.

Habeas petitioner Jermaine Sanders ("Petitioner") has filed a *pro se* application for the writ of habeas corpus, challenging his state court convictions and sentences. Currently pending before the Court is the State's motion to dismiss the habeas petition without prejudice on the ground that Petitioner did not exhaust state remedies for all his claims. The Court has concluded for the reasons given below that the habeas petition must be dismissed with prejudice.

### I. Background

On February 22, 1999, a circuit court jury in Jackson County, Michigan found Petitioner guilty of delivering less than fifty grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv), and conspiring to deliver less than fifty grams of cocaine, Mich. Comp. Laws § 750.157a. On April 7, 1999, the trial court sentenced Petitioner as a third habitual offender to two concurrent terms of ten to twenty years for the crimes.

Petitioner appealed by right on the grounds that the evidence was insufficient to support his convictions, that the prosecutor committed misconduct during closing arguments, and that the trial court abused its discretion when sentencing him. The State cross-appealed, arguing that the trial court should have ordered the sentences to run consecutively rather than concurrently.

On July 7, 2000, the Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished *per curiam* opinion after concluding that the evidence was sufficient to support the convictions and that the prosecutor did not err in making the challenged comments. The court of appeals nevertheless agreed with the prosecutor that the trial court should have imposed consecutive sentences. The court therefore remanded the case for re-sentencing and stated that it was unnecessary to address Petitioner's claim regarding the appropriateness of his sentences. *See People v. Sanders*, No. 219076, 2000 WL 33417391 (Mich.Ct.App. July 7, 2000).

Petitioner then filed a *pro se* application for leave to appeal in the Michigan Supreme Court. He raised the same three issues that he had presented to the Michigan Court of Appeals. He also argued that the State had failed to preserve its sentencing claim in the trial court. On November 29, 2000, the supreme court denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *See People v. Sanders*, 463 Mich. 924, 619 N.W.2d 548 (2000).

On February 28, 2001, the trial court re-sentenced Petitioner to consecutive prison terms of ten to twenty years for the delivery conviction and five to twenty years for the conspiracy conviction. Petitioner appealed his new sentence through counsel, but he subsequently stipulated to dismiss the appeal. On October 31, 2001, the Michigan Court of Appeals dismissed the appeal pursuant to the parties' stipulation. *See People v. Sanders,* No. 233943 (Mich. Ct.App. Oct. 31, 2001).

Petitioner signed and dated his habeas petition on June 2, 2002. His grounds for relief are that: (1) the evidence was insufficient to support the convictions; (2) the prosecutor committed misconduct in his closing arguments; and (3) the trial court abused its discretion in sentencing Petitioner to ten to twenty years on each count. Respondent urges the Court to dismiss the habeas petition as a "mixed petition" of exhausted and unexhausted claims.

## II. Discussion

### A. Exhaustion of State Remedies

The doctrine of exhaustion of state remedies requires state prisoners to present their claims to the state courts before raising their claims in a federal habeas corpus petition. 28 U.S.C. § 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the State's established appellate review process. *O'Sullivan,* 119 S.Ct. at 1732. This means that state prisoners in Michigan must present their habeas claims to the Michigan Court of Appeals and the Michigan Supreme Court before raising them in a federal habeas corpus petition. *See Dombkowski v. Johnson,* 488 F.2d 68, 70 (6th Cir.1973).

■ Petitioner raised all three habeas claims in the Michigan Court of Appeals and in the Michigan Supreme Court. Respondent maintains that Petitioner did not exhaust his sentencing claim by appealing his new sentence after re-sentencing. However, Petitioner is not challenging what occurred at the re-sentencing or the fact that his sentence was harsher after re-sentencing. He continues to maintain, as he did in his first appeal of right, that the trial court abused its discretion when sentencing him. Whether Petitioner exhausted state remedies for his third claim cannot turn on whether the Michigan Court of Appeals refused to address a claim that was squarely raised in Petitioner's brief and vigorously opposed in the State's brief. *Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 599, 54 L.Ed.2d 582 (1978). The court of appeals chose not to address Petitioner's proportionality claim, although it could have done so and then remanded the case for consecutive sentences. The fact that the court of appeals did not retain jurisdiction also suggests that the court simply opted not to adjudicate Petitioner's sentencing claim.

■ Even if the Court were to deem Petitioner's sentencing claim unexhausted, the claim has no merit, and the interests of comity and federalism are better served by addressing Petitioner's claims rather than dismissing the entire habeas petition for the failure to exhaust state remedies. *Lyons v. Stovall,* 188 F.3d 327, 333 (6th Cir.1999); *see also* 28 U.S.C. § 2254(b)(2)(authorizing courts to deny a habeas petition on its merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). The Court, therefore, will excuse the alleged failure to exhaust state remedies and will proceed to address Petitioner's claims.

### B. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, —— U.S. ——, —— – ——, 123 S.Ct. 1848, 1852–53, 155 L.Ed.2d 877 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 1522. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002).

## C. Sufficiency of the Evidence

Petitioner's first claim alleges that the evidence produced at trial was insufficient to support his two convictions. The testimony at trial established that Petitioner handed something to a juvenile accomplice who turned around and sold 39 grams of cocaine to an undercover police officer. Petitioner's sufficiency-of-the-evidence claim is based on the officer's testimony that he did not see what was in Petitioner's hand.[1]

Petitioner's claim requires the Court to ask

whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) (internal citation and footnote omitted) (emphasis in original).

The Court must view this standard through the framework of 28 U.S.C.

---

1. In addition, Petitioner was not caught with cocaine or the buy money on him.

§ 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir.2002), *cert. denied*, 537 U.S. 1004, 123 S.Ct. 515, 154 L.Ed.2d 401 (2002). In addition, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 99 S.Ct. at 2792 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir. 2003) (citation omitted).

### 1. Delivery of Cocaine

■■■ In Michigan, " '[d]eliver' or 'delivery' means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." MICH. COMP. LAWS § 333.7105(1). "[T]he act of transferring a controlled substance is sufficient to sustain a finding of an actual delivery." *People v. Maleski*, 220 Mich.App. 518, 522, 560 N.W.2d 71 (1996). Delivery of a controlled substance is a general intent crime; consequently, the prosecutor is not required to demonstrate "a particular criminal intent beyond the act of delivering the controlled substance." *Id.*

The Michigan Court of Appeals summarized the evidence on the delivery count as follows:

> Officer Jason Strebe testified that he saw [Petitioner] hand an object to a juvenile and that the juvenile then handed the object—later identified as cocaine—directly to Strebe. Strebe testified that the juvenile did not reach into any of his pockets at any time between receiving the object from [Petitioner] and handing the cocaine to Strebe. The reasonable inference from this evidence is that the object that [Petitioner] handed to the juvenile was the cocaine that the juvenile delivered to Strebe.

*Sanders*, Mich. Ct.App. No. 219076, 2000 WL 33417391 at *1. The court of appeals concluded that a rational trier of fact could have found that the prosecutor proved the elements of the delivery charge beyond a reasonable doubt. *Id.* at *1.

### 2. Conspiracy to Deliver Cocaine

The Michigan Court of Appeals has described the crime of conspiracy as follows:

> A conspiracy is mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means. Being a specific-intent crime, conspiracy requires both the intent to combine with others and the intent to accomplish the illegal objective. The essence of a conspiracy is the agreement itself. Nevertheless, direct proof of agreement is not required, nor is proof of a formal agreement necessary. It is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. A conspiracy may be proven by circumstantial evidence or may be based on inference. The crime of conspiracy is complete upon formation of the agreement. No overt act in furtherance of the conspiracy is necessary.

*People v. Cotton*, 191 Mich.App. 377, 392–93, 478 N.W.2d 681 (1991)(internal citations omitted).

The facts supporting the conspiracy count in this case have been summarized as follows:

> Officer Strebe testified that after he asked to buy drugs from [Petitioner], [Petitioner] told him to wait because [Petitioner] was waiting for "his boy." Officer Jeff Mazur, who worked undercover with Strebe and who accompanied Strebe during the drug transaction, testified that, from his experience, he understood [Petitioner's] reference to the juvenile as "his boy" to mean that the juvenile was selling drugs for [Petitioner]. Strebe testified that he then heard [Petitioner] yell to the juvenile and ob-

served the juvenile approach and talk to [Petitioner]. According to Strebe, [Petitioner] and the juvenile then walked over to a vehicle, and [Petitioner] took an object from the vehicle and handed it to the juvenile, after which the juvenile walked over to Strebe and handed Strebe some cocaine.

*Sanders*, Mich. Ct.App. No. 219076, 2000 WL 33417391, at *1.

The court of appeals determined that "[t]his evidence and the reasonable inferences based on this evidence were sufficient to show beyond a reasonable doubt that [Petitioner] and the juvenile had an understanding or agreement to deliver and sell cocaine to Strebe." *Id.* The court of appeals concluded that there was sufficient evidence to support Petitioner's conspiracy conviction.

### 3. The State Court's Decision

■ The state appellate court's conclusions on the delivery and conspiracy charges are supported by the record and are objectively reasonable. The record indicates that the undercover officer solicited cocaine from Petitioner and saw Petitioner motion to a juvenile, converse with the juvenile, retrieve something from a car, and give something to the juvenile. Although the officer did not know for sure what was in Petitioner's hand, the juvenile handed the item to the officer immediately after Petitioner placed the item in the juvenile's hand. The juvenile did not have anything in his hands before he met with Petitioner, and a laboratory analysis established that the substance delivered to the undercover officer was 39 grams of cocaine.

A rational trier of fact could have inferred that Petitioner and the juvenile conspired to deliver cocaine and then actually delivered the cocaine to the undercover officer. Consequently, the state court's conclusion (that the evidence was sufficient) was not an unreasonable application of *Jackson*, and Petitioner has no right to habeas relief on the basis of his first claim.

### D. The Prosecutor's Conduct

Petitioner's second claim alleges that the prosecutor engaged in misconduct when he argued to the jury that Petitioner did not deny selling drugs and did not walk away when the police solicited him for a drug buy. Petitioner argued in state court that the prosecutor's comments violated his Fifth Amendment right to remain silent.[2] The State countered in its appellate brief that Petitioner did not object to the arguments at trial and that Petitioner himself first brought up the issue. The Michigan Court of Appeals denied relief in part because of Petitioner's failure to object at trial.

■ "A federal court is generally barred from considering an issue of federal law arising from the judgment of a state court if the state judgment 'rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the [state] court's decision.'" *Patterson v. Haskins*, 316 F.3d 596, 604 (6th Cir.2003) (quoting *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989)).[3] "Michigan has a

---

**2.** Because Petitioner is not represented by counsel and did not file a supporting brief, the Court has looked to his state appellate court brief for a better understanding of his claims.

**3.** Respondent has not raised procedural default as a defense. However, the Court may raise the issue *sua sponte* and without soliciting supplemental briefs from the parties when the error is manifest in the record and there is nothing that the parties can bring to the court's attention to bear on the default. *Elzy v. United States*, 205 F.3d 882, 886–87 (6th Cir.2000).

On direct appeal, Petitioner admitted in his state appellate court brief that he did not object to the prosecutor's comments at trial.

contemporaneous objection rule." *Lancaster v. Adams,* 324 F.3d 423, 437 (6th Cir.2003)(citing *People v. Schutte,* 240 Mich.App. 713, 721–22, 613 N.W.2d 370(2000)("Appellate review of allegedly improper conduct by the prosecutor is precluded where the defendant fails to timely and specifically object; this Court will only review the defendant's claim for plain error")).

■ Petitioner violated this procedural rule by not objecting at trial to the prosecutor's closing and rebuttal arguments. The Michigan Court of Appeals relied on Petitioner's procedural default by stating that it would not review the issue in the absence of an objection at trial "unless the prejudicial effect could not have been cured by a jury instruction or failure to consider the issue would result in manifest injustice." *Sanders,* Mich. Ct.App. No. 219076, 2000 WL 33417391, at *2 (internal quotations omitted).

■ A procedural rule is "adequate and independent" if it is "firmly established and regularly followed" by the time it is applied. *Rogers v. Howes,* 144 F.3d 990, 992 (6th Cir.1998)(quoting *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991)). Michigan courts enforce the contemporaneous-objection rule, *Lancaster,* 324 F.3d at 437, and the rule was firmly established and regularly followed before Petitioner's trial. *See, e.g., People v. Ullah,* 216 Mich.App. 669, 679, 550 N.W.2d 568 (1996)(citing *People v. Stanaway,* 446 Mich. 643, 687, 521 N.W.2d 557 (1994)).

■ A procedural rule is an independent basis for a state court's disposition if the state court actually relied on the rule.

*Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989). The Michigan Court of Appeals relied on Petitioner's procedural error, but also concluded that, even if Petitioner had objected to the prosecutor's comments at trial, reversal was not warranted. The state court's alternative holding does not preclude this Court from concluding that the federal claim is procedurally defaulted. As the Supreme Court explained in *Harris,*

a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. Thus, by applying this doctrine to habeas cases, [*Wainwright v.*] *Sykes,* [433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Id.* at 1044 n. 10 (emphasis in original)(internal citation omitted); *cf. Stewart v. Smith,* 536 U.S. 856, 122 S.Ct. 2578, 2581, 153 L.Ed.2d 762 (2002)(stating that, "if the state court's decision rested primarily on a ruling on the merits ..., its decision would not be independent of federal law"). Therefore, in order for this Court to consider Petitioner's claim, he must show "cause and prejudice" or a miscarriage of justice.

---

Furthermore, the State argued that the issue was not preserved for appeal; and the Michigan Court of Appeals commented on Petitioner's failure to object at trial. Thus, the procedural default is obvious from the record and there is little more that the parties could add to the issue. This Court believes that it is justified in raising the issue of procedural default *sua sponte.*

■ Petitioner has not alleged "cause and prejudice." Although he could have alleged that his trial attorney was "cause" for the failure to object at trial, he did not assert ineffective assistance of counsel as an independent claim in state court. Thus, he is precluded from asserting ineffective assistance of counsel as cause for his procedural default. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986).

The only other question is whether this Court's failure to consider the substantive merits of Petitioner's prosecutorial-misconduct claim will result in a miscarriage of justice. The exception for miscarriages of justice requires showing "that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).

> To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup,* 115 S.Ct. at 865.

■ Petitioner maintained his innocence throughout the state court proceedings, but he has not shown that, in light of new and reliable evidence, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 868. Accordingly, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate the substantive merits of Petitioner's second claim.

His state procedural default of failing to make a contemporaneous objection at trial bars habeas review of the claim.

#### E. The Sentences

Petitioner's third and final claim is that the trial court abused its discretion when sentencing him. Petitioner argued in state court that his sentences were disproportionate to the offense and to the offender and violated the federal constitutional protection against cruel and unusual punishment.

Because the Michigan Court of Appeals did not address this claim, this Court must look at the result of the state court's decision. *Bugh v. Mitchell,* 329 F.3d 496, 507–08 (6th Cir.2003). The question in these circumstances is whether the state court's decision was contrary to clearly established Supreme Court precedent. *Id.* at 508.

■ A state court's abuse of discretion generally does not constitute a violation of federal constitutional rights, *Sinistaj v. Burt,* 66 F.3d 804, 808 (6th Cir.1995), and a plurality of the Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *See Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 2686, 115 L.Ed.2d 836 (1991). The Cruel and Unusual Punishment Clause of the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 2705 (Kennedy, J., concurring) (citation omitted).

Harmelin was sentenced to life imprisonment without the possibility of parole for simple possession of more than 650 grams of cocaine, and he had no prior felony convictions. In another drug case, the Supreme Court determined that forty years in prison for possession and distribution of approximately nine ounces of marihuana was not cruel and unusual punish-

ment under the Eighth Amendment. *See Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982).

Supreme Court cases involving recidivists are also instructive. In *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the Supreme Court held that a recidivist's life sentence (with the possibility of parole) did not constitute cruel and unusual punishment even though the offense was obtaining $120.75 by false pretenses, a crime punishable by at least two years, but not more than ten years in prison.[4]

Recently, the Supreme Court determined that a recidivist's minimum sentence of fifty years in prison for two minor property offenses did not violate the gross disproportionality principle. *See Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). And in *Ewing v. California,* 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) the Supreme Court held that a repeat offender's sentence to a minimum term of twenty-five years for theft of personal property worth about $1,200 did not violate the Eighth Amendment's prohibition on cruel and unusual punishments.

 Petitioner initially was sentenced to imprisonment for ten to twenty years; he was re-sentenced to imprisonment for fifteen to forty years. He was nineteen years of age when the trial court sentenced him in 1999. His criminal history included a juvenile adjudication for delivery of cocaine and two previous drug convictions as an adult. After Petitioner was paroled on those offenses, he tested positive for cocaine use and he quit his job without his parole officer's permission. He allegedly told his parole officer that he had no intention of working because it

consumed too much of his life. The trial court construed this comment to mean that Petitioner's job interfered with his drug trafficking. Petitioner committed the offense in this case while he was on parole. The trial court stated at the re-sentencing that its goals in sentencing Petitioner were protection of society, deterrence, rehabilitation, and punishment.

When viewed in light of the Supreme Court cases cited above, Petitioner's sentence is not grossly disproportionate to the offense and the offender. Accordingly, the state court's denial of relief was not contrary to Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief on the basis of his third and final claim. Accordingly, the Petition must be denied.

A Judgment consistent with this Opinion shall issue forthwith.

---

4. Rummel's two prior felonies consisted of: (1) fraudulent use of a credit card to obtain $80.00 worth of goods and services, a felony punishable by two to ten years in prison; and (2) passing a forged check for $28.36, a crime punishable by two to five years in prison.